Thank you, and may it please the court. The district court's refusal to instruct the jury regarding defendant Kim Taylor's central theory of defense warrants reversal and a new trial. As the government concedes, the key issue at trial was whether Ms. Taylor lacked the requisite intent to commit voter fraud because she did not know that a parent proxy signing a voter form with the child's consent was unlawful and thus false under the statutes. Because the district court refused to give that theory of defense instruction, the jury did not understand that they needed to find that Ms. Taylor knew that Iowa law, for the most part, disallows proxy signing on voter registration and absentee ballot documents. Mr. Counsel, so I'm trying to figure out what you wanted that was different. So I think it's on pages, I want to say 11 and 14 of the instructions, but the relevant instructions said this. The phrase, deprive or defraud the residents of Iowa of a fair and impartially conducted election process means that the defendant acted in a manner intended to deceive or mislead election officials into accepting a ballot, and here's the key, that the defendant knew to be defective under Iowa law. That means she had to know that it was illegal under Iowa law. So that is for a mistake of law defense. So what did the district court need to do? That's a pretty standard instruction. Sure, thank you. I want to answer your question first, but I want to make sure that I note that you're only talking about half of the counts in the case. You're only talking about the instruction that covered counts 27 to 52. So let me address yours first. So on that, what I would say is that there are separate elements under this statute. There's the provision in 2511 subsection 2 that you have to be giving applications or giving ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of the state. That's element 2. Element 4 is the deprive, defraud, or attempt to deprive or defraud the residence of a state of affair in an impartially conducted election process. So the first response is that this is only given in connection with the fourth element. It is not given in connection with the second element where the instructions only say that you need to find that the defendant knew the ballot was materially false, fictitious, or fraudulent, and as for knowingly, just gives a standard knowingly instruction. So it's not enough there. But the second reason that I think is even more important is that what you're saying is there is no doubt that under Eighth Circuit case law, it says that a failure to give a requested theory of defense instruction can be excused when the instructions adequately cover it. That's really well known in the Eighth Circuit case law. That is not an argument that the government has made here. The government's two arguments that they are making is that it would have been erroneous to give the instruction that we wanted, to require the jury to find that Ms. Taylor knew that Iowa law mostly disallowed proxy signing. On top of that, they say no prejudice. So we view that as a waiver, but even if it's not a waiver, the argument they're making is completely contrary to believing that the jury could have understood that. If the government today, months later, in briefing this appeal, doesn't believe that the jury instructions adequately covered it and argue that the court would have been acting unlawfully if it did give our theory of defense instruction, how could the jurors possibly have understood it? More importantly, as I said, on the first 26 counts, there's nothing like that in there at all. But you agree, yeah, we can talk about that, but you agree, though, that if the jury thought that she didn't know it was illegal under Iowa law, this instruction would basically say you can say that the fourth element has not been satisfied, if they understood it. Correct. That is correct. And the other thing I should say also is that when it gets there, what we wanted was we wanted a theory of defense instruction that is very specific to the fact that do you know that proxy signing with consent is illegal under law? That's what we wanted. What this says, what you read there, just talks about defective under Iowa law, and I don't know whether that's enough. This was the central defense in the case. The government concedes that in their brief, that this was the central defense in this case. And it makes sense that people could believe that you could proxy sign. Not only is that normally what we all assume in everyday life, it's what we have submitted that in Iowa has been true as common law for a century, but the evidence in this case showed it. Two of the allegedly defrauded voters, who were the son and daughter of the first family's matriarch, Hung Nguyen, those were Tom London and Tien Tom Don, they testified in this case. They were some of the first three witnesses in the case. And what they testified was that the daughter, at her brother's request, filled out an absentee ballot request for him in this election and signed his name for it. And there was no question. Nobody thought like, oh, what in the world is going on? People obviously think that that could be the case. The only reason, what Supreme Court case law, cases like Liparota that are cited in the government's brief, or Rahafe which is cited in our brief, are cases about knowingly, as distinguished from the litany of cases like Bryan on willfulness that are discussed in the government's brief. And what those Supreme Court cases say is that while generally speaking, ignorance of the law is not a defense, Congress can define crimes where they link knowledge to certain things that have to be found, and that can make knowledge of the law a requirement. And that's the key case here. Both of these statutes required knowing falsity. Well, that's not entirely true. So the first one says, well, I mean, you've got whoever knowingly or willfully, right? And willfully, the problem, let me just put it this way. Willfully covers what you're asking for. It requires you to have knowledge that it's illegal, or at least that's a plausible interpretation. But knowingly, unless it's surplusage, normally requires, and this is from Supreme Court precedent, merely requires proof of knowledge of the facts that constitute the offense. That's Bryan versus United States. And so the problem I'm having is the disjunctive or there, where you have willingly, which says what you say, but you have knowingly, which is a lesser mens rea. So I'm not sure on the one where they didn't receive the instruction, I'm not sure you're right about that. Well, willfully requires, well, first of all, on that one, we don't know which the jury concluded on. And so if there's an error to instruct on knowingly, then that would be enough. But on that, willfully, the cases say you generally have to know that it's, again, that you are doing something that violates the law. Not that you are violating a specific known duty or anything like that. Knowingly here, cases like Brehev say that everything that follows that should be read to be modified by that. And that includes the false information. You have to know that it's false. In a standard false statements case that doesn't even involve election fraud, just a standard false statements case, you have to prove that the defendant knew the information was false. And here, the government's theory is about signatures. The government's theory is that when someone other than the voter puts their name on that line, that is false information because you are not the person who is the actual voter or the person requesting to register to vote. So you have to know that it's false. And there's nothing inherently false about proxy signing, as the example of the two witnesses in this case shows. There's nothing inherently false about that. You have to show that it's knowingly false. And to show that it's knowingly false, you have to show that the defendant knew that Iowa law means you can't do that. That's what makes it false is that it's unlawful. So that's why I would say that knowingly in that statute does require that. And there is a difference with the disjunctive there between knowingly or willfully because of the fact that willfully is generally knowing that you're not doing something right. On top of that, if anything, putting both knowingly and willfully in the statute, just like in 2511, just shows that Congress was very concerned to make sure that we are not going to criminalize core First Amendment-protected activity, get-out-the-vote-type activity. We know that Congress cared about this because there are these heightened mens reas in these statutes. That's what's going on here. And that's why we believe that we should have had a theory of defense instruction. It was supported by the evidence. It's correct under the law. And the other instructions do not adequately cover it, even though that issue is waived. And she was certainly prejudiced. The government's only argument about prejudice that's made in two paragraphs at the end of the brief is that we were allowed to present our defense. That is not enough to show no prejudice. If you want to talk about the evidence in the case, what the cases say is you have to show that the evidence was so overwhelming that no juror could have come to any other conclusion. They don't even try to prove that. And we have a whole second half about insufficiency of the evidence. And then if what you were going to say is it allowed you to present your argument, the other thing you have to show, which is under this Court's case, United States v. Robertson, is that the jury instructions also reasonably ensured that the jury considered the evidence. And that makes sense. Like, the problem with a jury instruction error is not that you have limited the defense, what they're allowed to present in evidence or argue. It's that you are interfering with the jury's understanding of it. And here, without the instruction that we requested, the jury couldn't understand it. Thank you, Counsel. Ms. Mundell. Good morning, Your Honors. Amanda Mundell on behalf of the United States. May it please the Court. I'd like to take a moment to respond to, first, the assertion that the government has somehow waived this issue of adequate instruction. I'd note for the Court that we actually briefed this in our brief. We highlight it right on page 47 in our brief, which explains that the reason why the district court's jury instructions were not in error was both because they were partly wrong, the instructions that Counsel had proposed, and also because the Court's instructions already adequately covered any of the other mens rea concerns. But it only covered it, as he said, it only really covered it for that second set where Iowa law was, or state law was mentioned, not the first set, counts one through, what, 22 or whatever it was, or 25? So Your Honor, with respect to the fraudulent voting and fraudulent registration counts, yes, those counts were adequately described in the jury instructions. The law was accurately stated. There was no need for additional embellishment or clarification on those grounds. But actually, with respect to the first counts about just the 103.07c charges, those were also adequately instructed because the statutory text doesn't require knowledge of a particular law or knowledge of the law at all. I think, as Your Honor pointed out, it just requires factual knowledge. And so the Court's jury instructions there were also free from error. Now, I want to- What exactly, though, did she, on that first one, what exactly did she have to know? What do you think of opposing, it doesn't say anything about Iowa law, granted, which is in the government's favor, but it says knowingly gives false information, and we have signatures here. So in your view, what does that require in this case, in terms of what the jury needed to find? Well, the jury was actually instructed exactly on that. The jury was instructed that signing another person's name for the purpose of establishing eligibility to register or vote may constitute giving false information, even if the name signed is that of a real voter. That's at Addendum 24. And I'll note that Ms. Taylor's counsel didn't object to that instruction or that description of falsity. And I also just want to take a step back. You know, Your Honor, I don't recall that that argument was ever made in district court in those terms, that this instruction was necessary to clarify that the falsity has to be knowing because a signature by someone else might not be knowingly false. And I don't really recall that being part of counsel's opening brief in so many words. So I think this argument has evolved a little bit over time. But to go back to the jury instruction there, the jury was instructed that signing someone else's name may constitute false information. And of course, that's clear even from the face of the attestations and the various forms themselves. You know, I would note for the court, for example, Government Exhibit 2, which is a voter registration form that's Record Doc 69-4, there's the entire affidavit at the bottom that says, warning, if you sign this form and you know the information is not true, you may be convicted of perjury. And the affidavit itself says, I swear or affirm under penalty of perjury that I am the person named above. The jury reasonably could have concluded from that and the court's instruction that the person who needs to sign this form is the voter, absent some other extenuating circumstance like the voter being incapacitated or disabled. And I think there was testimony that when that occurs, typically the person has to be there in person and there's a separate little form that has to be checked explaining why someone else signed for the voter. There was no evidence that any of these voters were that way. Some of them were overseas serving, you know, a deployment in the military and simply were not home and were totally unaware that their voter documents were being filled out in this fashion. And all the other adult children of these families similarly testified that they had no idea that their forms were being filled out and hadn't given their parents permission or Ms. Taylor permission to sign them. Your Honors, I think opposing counsel also somehow suggested that in this context and in this space, there needs to be some sort of heightened jury instruction given because of the First Amendment overlays. That's also not true here. You know, those sorts of Bryan-type heightened willfulness and mens rea instructions are given usually in the context of very complicated, complex, confusing technical statutes. The classic example is the tax code. And the reason why a heightened standard there is necessary is because individuals may engage in conduct that they think is perfectly innocent when in reality, a complicated or technical tax code law actually makes that unlawful. And so a heightened standard is necessary here. But we are dealing with general voter laws that individuals of the general public can easily appreciate. And to the extent that there's confusion, again, all of those forms put voters and people like Ms. Taylor on notice. And she is not an inexperienced person in this space either. She's someone who has served as a legislative aide. She's helped her husband campaign. She has translated documents like this for others at the polls. She has been heavily involved in politics. So the jury would have considered all of that in context with the court's jury instructions to find her guilty on all of the charged offenses. Your Honors, unless there's any other questions, we would submit on the briefs and simply ask that this court affirm. Thank you, Counsel. Thank you. I believe the time for rebuttal has expired. I'll give you one minute. Was there any time left? I don't believe there was. I thought I reserved three. Okay. No worries. I do what the court tells me to do. What I would like... I would like the court to look at the adequacy argument, if you were to decide that. That's at pages 49 and 50 of their brief. That is not the adequacy argument you are making. They say that it's adequacy because of all of the arguments they have about willfulness that you didn't need to instruct on the law. This is not an adequacy argument that says the jury understood that they needed to find that she knew Iowa law on proxy signing. They have never made that argument, and with good reason. They are saying it would have been an error to instruct the jury as that. As for the argument that 10307C just talks about factual knowledge, she answered your question, Judge Strauss, by reading the jury instruction that says, no, what is actually false is the signature being placed there by someone else. Yet there is no instruction in the counts for 1 through 26 that says that the jury had to find that type of knowledge. And we have made the argument that it is also missing from the others. And as to the affidavits, as she conceded, under Iowa law, someone other than the person can put a mark there or sign for them. So that attestation can't possibly mean that proxy signing is unlawful. Thank you. Thank you, counsel. The case is submitted and the court will issue an opinion in due course.